# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-727V

|  |  |
|---|---|
| ROBERT CHIAGO,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: July 7, 2025 |

*Courtney Christine Jorgenson*, Siri & Glimstad, LLP, Phoenix, AZ, for Petitioner.

*Mitchell Jones*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION[1]

On January 13, 2021, Robert Chiago filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine received on October 23, 2020, he suffered a left shoulder injury related to vaccine administration ("SIRVA") as defined on the Vaccine Injury Table ("Table"). Petition (ECF No. 1) at ¶¶ 1, 3. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the foregoing reasons, I find that Petitioner has provided insufficient proof of severity of injury, as required for all Vaccine Act claims. Respondent's motion to dismiss

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

the Petition on that basis (ECF No. 35) is therefore **granted**.

I.     Procedural History

Notably, Petitioner filed this action only three months after receiving the flu vaccine alleged to have caused his injury. He therefore was incapable, at the outset of this matter, from addressing the six month severity requirement. Instead, Petitioner generally alleged that his pain "has continued, and it is *anticipated* that it will last for several more months, at minimum" and that "[c]onservative treatment has yet to offer [him] any relief." *Id.* at ¶¶ 1-2 (emphasis added).

On October 19, 2021, Petitioner completed his required filings. ECF No. 22. On April 14, 2022, the case was assigned to SPU. ECF No. 24. Respondent filed a Rule 4(c) Report on June 30, 2023 stating his position that the case should be dismissed for failure to demonstrate entitlement to compensation. ECF No. 31 (Rule 4(c) Report) at 2. Respondent also filed a separate motion to dismiss, referencing the Rule 4(c) Report, on June 30, 2023. ECF No. 32

In the Rule 4(c) Report, Respondent opposed the Table SIRVA claim on the ground that Petitioner had failed to satisfy the statutory severity requirement. Rule 4(c) Report at 7-10. Respondent also asserted that Petitioner had not established the Table requirement of an onset within forty-eight hours, and that his injury did not meet the SIRVA Qualifications and Aids to Interpretation ("QAI"). *Id.* at 10-11. In particular, Respondent pointed to medical records indicating that Petitioner had a history of shoulder pain and dysfunction predating the October 23, 2020 vaccination, that the vaccination record did not specify the administration situs, and that Petitioner's treaters expressly related his post-vaccination complaints to his pre-existing shoulder condition. *Id.* Additionally, Respondent opposed an off-Table, causation-in-fact claim because Petitioner had not alleged a specific shoulder diagnosis and had not offered a medical or scientific theory showing that the flu vaccine caused his left shoulder injury. *Id.* at 12.

On July 10, 2023, I entered a scheduling order setting deadlines for briefing on Respondent's motion to dismiss and for Petitioner to file any additional evidence. ECF No. 34. Petitioner then filed medical records and five witness statements. Petitioner filed a response to the motion to dismiss on July 31, 2023. ECF No. 38 (Pet'r Opp'n). Petitioner also filed a motion for a decision on the record, referencing his response to the motion to dismiss, on August 1, 2023. ECF No. 39. On August 31, 2025, Respondent filed a combined reply in support of his motion to dismiss and response to Petitioner's motion for a decision on the record. ECF No. 40 (Resp't Reply). On September 9, 2023, Petitioner

2

filed a combined reply in support of his motion for a decision on the record and a surreply to the motion to dismiss. ECF No. 41 (Pet'r Reply). This matter is ripe for adjudication.

## II.     Relevant Evidence

I have reviewed all of the evidence filed to date. I will only summarize or discuss evidence that directly pertains to the determinations herein, as informed by the parties' respective citations to the record and their arguments.

### A.     Petitioner's Pre-Vaccination Medical Status

Petitioner was born in 1942. *See, e.g.*, Ex. 8 at 73. The earliest records filed by Petitioner dated from October 2017, and indicated that he was then receiving ongoing treatment for lower back pain and bilateral knee pain at The Pain Center of Arizona ("Pain Center"). Ex. 3 at 80-83. Through 2018 to 2020, Petitioner had regular appointments at the Pain Center for pain management, including refills of an opioid pain medication, focusing on his lower back and knee pain. Ex. 3 at 57-75; Ex. 8 at 347-365. It appears that the Pain Center recorded Petitioner as having the active problem of left shoulder pain in 2015, and that he mentioned shoulder tenderness on one occasion in October 2017. Ex. 8 at 302-303, 374. Petitioner received medial branch blocks and radiofrequency ablation for his lower back pain in June to October 2020. Ex. 3 at 2-4, 8.

Petitioner also regularly received medical care at the Phoenix Indian Medical Center ("PIMC"). As relevant here, records from a November 16, 2017 appointment noted that he had "chronic left shoulder pain," bilateral rotator cuff syndrome, and bilateral biceps ruptures, for which he was "already seeing ortho through the [Veterans Affairs] Health Center." Ex. 8 at 255, 259. At this November 16, 2017 appointment, Petitioner sought a referral for physical therapy ("PT") for his left shoulder. *Id.* at 263. Petitioner also received treatment for his lower back and knee pain at PIMC starting in 2019. *Id.* at 102-104, 107-109. Petitioner mentioned pain when moving his shoulders and rotator cuff tears in May 2019. *Id.* at 139-140. In July 2019, Petitioner requested an x-ray of his left shoulder for a "possible cyst" and also of his left elbow so that these issues could be discussed at an upcoming appointment for his back pain. *Id.* at 111.

Additionally, Petitioner raised lower back, knee, and hand pain concerns with the orthopedic clinic and his primary care physician at the Phoenix Veterans Affairs Health System ("VA") in 2018-2019. Ex. 2 at 48, 73-74, 80. Petitioner received PT for right hand pain from March 2020 through October 8, 2020. Ex. 2 at 5-6. On August 25, 2020, Petitioner saw a rheumatologist for right hand pain and also was noted to have mild pain and grinding in his left shoulder. *Id.* at 11.

In this same timeframe pre-vaccination, Petitioner also had a diagnosis of prostate cancer in 2014, but refused any treatment other than basic surveillance. *Id.* at 21. Petitioner's VA physician became extremely concerned about his rising prostate-specific antigen levels and potential for metastatic disease. *Id.* at 15, 48, 74. Eventually, Petitioner consented to treatment and received Cyberknife radiation therapy in October to November 2020. Ex. 4 at 7-8, 11.

### B.    Petitioner's Post-Vaccination Left Shoulder Treatment

On October 23, 2020, Petitioner received the flu vaccine at a PIMC immunization clinic. Ex. 8 at 73-75. The administration record does not indicate in which arm he received the vaccine. *See id.*

On November 4, 2020, Petitioner called PIMC and complained of pain in his left shoulder where he received the vaccine. *Id.* at 70. Petitioner believed that he had been given the vaccine "too high and in the shoulder." *Id.* PIMC made an appointment for Petitioner that afternoon. *Id.* At his appointment, Petitioner elaborated that he had a "sharp aching pain to his left arm/shoulder where he got his flu shot . . . ." *Id.* at 63. The treating nurse practitioner assessed that Petitioner could have "possible exacerbation of chronic [rotator cuff] injury after local inflammation from vaccine." *Id.* Petitioner was prescribed an anti-inflammatory, lidocaine ointment, and a muscle relaxant. *Id.*

Petitioner returned to PIMC on November 24, 2020 regarding his left shoulder pain. Petitioner stated that he still had pain in his left shoulder joint area at the place where the collarbone met the shoulder. *Id.* at 55. He also complained of a decrease in his range of motion. *Id.* The treating physician, Dr. Yamini Goswami, noted Petitioner's history of rotator cuff injuries and suspected that his shoulder joint pain was a "separate condition" from the arm pain related to his flu vaccine. *Id.* at 53. Dr. Goswami ordered an x-ray. *Id.*

Later that day, Dr. Goswami called Petitioner to discuss the x-ray results. Dr. Goswami informed Petitioner that the x-ray showed a "bony abnormality-su[b]luxation of humeral head, decreasing the subacromial space, suggestive of rotator cuff injury," which Petitioner had had in the past. *Id.* at 49. Dr. Goswami also advised Petitioner that this was "likely a CHRONIC condition, and not due to the flu shot." *Id.*

On November 25, 2020, Dr. Goswami called Petitioner to discuss lab test results, including related to his prostate cancer, and also mentioned Petitioner's left shoulder pain. Dr. Goswami reinforced that Petitioner should see orthopedics for his left shoulder condition "caused by rotator cuff syndrome, which ha[d] been present long term." *Id.* at

4

50. When Petitioner questioned how the flu vaccine could cause pain in that area, Dr. Goswami stated that the flu vaccine "may have precipitated any underlying inflammation and pain that was already there." *Id.* Dr. Goswami included an addendum to these notes that Petitioner had a diagnosis of left rotator cuff syndrome dating to April 28, 2008. *Id.*

As stated above, Petitioner filed his Petition on January 13, 2021. On January 29, 2021, Petitioner presented to the family practice clinic at Salt River Integrated Healthcare to establish care. Ex. 7 at 2. Petitioner discussed that he still had pain in his left upper arm at the injection site of his vaccination. *Id.* Petitioner was noted to have a "tender bump" at the site and tenderness to palpitation. *Id.* at 2-3. The treating physician, Dr. Raysenia James, ordered an ultrasound of Petitioner's left shoulder. *Id.* at 2.

Petitioner returned to Dr. James's office on February 2, 2021 with a primary complaint of lower back pain. *Id.* at 5. Petitioner's complaint of left shoulder pain was noted, but only that he had not yet scheduled the ultrasound. *Id.* Petitioner received the ultrasound on February 17, 2021. Ex. 11 at 33. The ultrasound did not detect any abnormalities. *Id.*

### C.   Petitioner's Other Medical Treatment Post-Vaccination

Petitioner had appointments with his urologist to discuss his prostate cancer on February 4, 2021 and March 19, 2021. Ex. 6 at 22, 43. Petitioner also saw Dr. James on February 9, 2021 to discuss his back pain and depression. Ex. 7 at 7. There is no indication that shoulder pain was discussed at these appointments, however.

After completing his shoulder ultrasound, Petitioner continued having regular appointments with Dr. James. Petitioner visited Dr. James' office on April 23, 2021, May 5, 2021, May 28, 2021, June 11, 2021, July 6, 2021, August 5, 2021, September 3, 2021, October 5, 2021, November 30, 2021, December 28, 2021, January 25, 2022, February 24, 2022, March 29, 2022, May 26, 2022, July 19, 2022, and August 3, 2022. *See* Ex. 11 at 7-8, 10-11, 13-14, 24-28, 48-49, 51-53, 67-71, 78-84, 86-112. Petitioner discussed complaints regarding his lower back pain, knee pain, hand pain, right shoulder pain, urinary issues, skin issues, dental issues, and sexual health. *See id.* Petitioner received refills of his opioid pain medication, completed routine lab-work, received trigger point injections for his back, and obtained an ultrasound of a lump in his right breast. *See id.* at 24, 37, 89-112. Although Petitioner routinely complained of pain in other parts of his body, none of the records for these appointments contain any mention of *left* shoulder pain.

Petitioner had mental health services appointment through the VA on February 24, 2021. Ex. 6 at 35. At this appointment, Petitioner reported that he was "experiencing a lot

5

of medical problems." *Id.* He particularly noted that his back pain was poorly controlled and affecting his sleep, but did not mention shoulder pain. *Id.*

Starting on May 27, 2021, Petitioner began behavioral health counseling for pain management at the River People Health Center. Ex. 11 at 15-20. At this intake session, Petitioner's primary issues were "[d]ifficulty coping with pain," and post-traumatic stress disorder from his combat experience in the Vietnam War. *Id.* at 15. Petitioner complained of chronic pain, which he attributed to years of "wear and tear" from physical activity. *Id.* at 16. Petitioner specifically mentioned that he had been living with knee and back pain for 25 years and that his back "hurts the worst, as well as his right hand." *Id.* There is no indication that Petitioner mentioned left shoulder pain.

Petitioner had further behavioral health sessions on June 10, 2021, June 24, 2021, July 8, 2021, and July 22, 2021. *Id.* at 5-6, 9, 12. These records discussed Petitioner's past knee replacements, hand pain, and general "chronic pain." *See id.* Again, it does not appear that Petitioner mentioned left shoulder pain.

Dr. James referred Petitioner to PT for his lower back pain and bilateral knee pain, which he began on May 25, 2022. *Id.* at 72-76. Petitioner was seen for PT once per week until July 7, 2022. *See id.* at 75, 54-72. Although he was receiving PT services for this pain, there is no indication in these records that Petitioner complained of left shoulder pain.

### D. Witness Statement Evidence

On September 22, 2021, Petitioner filed a declaration. Ex. 1. Petitioner stated in it that he began to feel a "stabbing and intense pain in [his] upper left arm and left shoulder area" several hours after receiving the vaccination. *Id.* at 1. Petitioner further stated that his pain "continues to this day." *Id.* Petitioner explained that he hadn't been able to play basketball and that it was hard to ride his bicycle, garden, and lift heavy objects due to his left shoulder pain. *Id.* at 2. In particular, Petitioner noted that on December 30, 2020, he had to hire people to remove things from his house to put in storage instead of doing it himself. *Id.*

After the filing of Respondent's Rule 4(c) Report and motion to dismiss, Petitioner filed additional witness statements from Dr. Steve Zuiker, Iris Chiago, Chelsey Bowling, Richard Hinrichs, and Jim Selby. *See* Ex. 12-16.

Dr. Zuiker[3] has known Petitioner for approximately 11 years and plays basketball with him on the Arizona State University faculty/staff association team. Ex. 12 at 1. Dr. Zuiker understood that Petitioner had received a vaccination in October 2020 that "caused him injury to his left arm." *Id*. at 2. Dr. Zuiker stated that Petitioner's basketball performance was "definitely diminished" once they were able to play together again after the COVID-19 restrictions eased up and "is still diminished to this day." *Id.* Dr. Zuiker asserted that Petitioner is now a "much more conservative player than he used to be, and the function of his left arm does not appear normal." *Id*. at 2.

Similarly, Mr. Hinrichs has known Petitioner for approximately 25 years and plays basketball with him 2-3 times per week. Ex. 15 at. 1. Mr. Hinrichs reported that after Petitioner's vaccination in October 2020, Petitioner told him that his left arm was painful. *Id.* Mr. Hinrichs also could "tell by just observing him that it is painful." *Id.* Mr. Hinrichs believed that Petitioner's ability to shoot baskets had decreased. *Id.*

Mr. Selby is also a member of the Arizona State University faculty/staff association basketball team and has known Petitioner for 10-15 years. Ex. 16 at 1. Mr. Selby stated that he talked with Petitioner several times about the "problem with his left arm" after the vaccination. Mr. Selby reported that Petitioner said his left shoulder hurt and that he was not able to move his arm in the same way anymore. *Id.* Mr. Selby assessed Petitioner has having trouble shooting the basketball and believed that "his arm injury has not resolved." *Id.* at 2.

Ms. Chiago is Petitioner's daughter. Ex. 13 at 1. Ms. Chiago asserted that after the vaccination, she could see that he had trouble moving his left arm. Ms. Chiago stated, "I know that the first year after vaccination was very painful for him, because he told me. After one year, the pain lessened slightly, but it still bothers him to this day. He continues to mention that his left arm bothers him." *Id.*

Ms. Bowling has lived with Petitioner since 2016. Ex. 14 at 1. Ms. Bowling also described Petitioner's left arm pain after vaccination and reported that Petitioner was now unable to do as many chores around the house. *Id.* In an apparent explanation for Petitioner's lack of treatment, Ms. Bowling stated, "[Petitioner] visited the doctor several times about the pain, but after several visits, they didn't seem to be able to find the cause of the pain and didn't treat him for it, so he didn't bring it up in later visits." *Id.*

---

[3] It is unknown if Dr. Zuiker is a medical doctor. He does not purport to have provided medical treatment to Petitioner.

III.   Analysis

    A.   Six-Month Severity Legal Standard

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that he suffered an injury falling within the Vaccine Injury Table, or (2) that he suffered an injury that was actually caused by his vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1). Under either method, however, a petitioner must demonstrate that the injured person has "suffered the residual effects or complications of his illness, disability, injury, or condition for more than six months after the administration of the vaccine."[4] Section 11(c)(1)(D)(i). Cases may appropriately be dismissed for failure to substantiate the severity requirement. *See, e.g.*, *Hinnefeld v. Sec'y of Health & Hum. Servs.*, No. 11-328V, 2012 WL 1608839, at *4–5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain–Barré Syndrome resolved less than two months after onset).

The petitioner carries the burden of establishing the matters required in the petition, including the severity requirement, by a preponderance of the evidence. Section 13(a)(1)(A); *see Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65-66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 2014). Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied,* 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

The Act prohibits finding that a petitioner has met this burden "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master

---

[4] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii).

required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

### B.     Petitioner Has Not Established Severity with Preponderant Evidence

In order to meet the statutory six-month severity requirement, Petitioner must demonstrate, by a preponderance of the evidence, that he suffered the residual effects or complications of his claimed injury beyond April 23, 2021. As it stands, however, the filed medical records establish only that although Petitioner may in fact have experienced a SIRVA, he did not obtain any medical treatment for it beyond the February 17, 2021 ultrasound – and then never again mentioned experiencing residual pain or other issues to any medical provider. The dearth of complaints regarding his left shoulder is in stark contrast to Petitioner's ongoing treatment of his lower back pain, knee pain, and hand pain.

The fact that Petitioner had regular appointments with medical professionals experienced in pain management, including the behavioral health aspects of coping with chronic pain, yet never introduced his left shoulder as an additional problem, is telling. Although Petitioner would not reasonably be expected to address shoulder pain with a specialist in another field (for example, with his urologist at appointments regarding his prostate cancer (*see* Pet'r Opp'n at 10)), Petitioner does not persuasively explain why he did not discuss his left shoulder with his pain management team. In that context – and contrary to Petitioner's argument – his complaints to his treaters about other areas of pain is not "unrelated" to continuing left shoulder pain. *See id.* at 9-10; Pet'r Reply at 3. Further, Petitioner had previously sought PT and an x-ray for his left shoulder rotator cuff issue. *See* Ex. 8 at 111, 263. The medical evidence submitted by Petitioner simply does not support his severity allegations.

Petitioner suggests that his behavioral health sessions, which occurred more than six months after vaccination, can corroborate severity. *See* Pet'r Opp'n at 4-5; Pet'r Reply at 5, 6-7. Petitioner points out that the notes for some of these appointments do not specify an area of pain or only refer to "chronic pain." *See id.* However, at his intake appointment on May 27, 2021, Petitioner referenced a number of concerns – his lower back, knee, and hand pain, as well as chronic pain that he attributed to aging. *See* Ex. 11 at 15-20. New left shoulder pain from the flu vaccine cannot reasonably be read into these statements.

Petitioner also largely relies on his own declaration to support severity, pointing to his sworn statement that his pain "continues to this day." *See* Pet'r Opp'n at 10-11 (citing Ex. 1 at 1). In making this argument, Petitioner ignores that the Vaccine Act prevents me from finding a petitioner entitled to compensation based upon the petitioner's claims alone. *See* Section 13(a). Petitioner cannot meet the sixth-month severity requirement based on his personal report of ongoing symptoms without any medical substantiation – and as noted, the record does not provide the missing substantiation.

Petitioner cites *James-Cornelius v. Secretary of Health & Human Services* for the principle that a lay witness may competently testify to facts within the witness's personal knowledge, such as the timing and severity of symptoms. Pet'r Opp'n at 11 (citing 984 F.3d 1374, 1380-81 (Fed. Cir. 2021)). But this ruling does not affect my analysis, because it only addressed the standard for whether a petitioner had no reasonable basis for bringing her claim in the context of the denial of a motion for attorney's fees. *See James-Cornelius on Behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379-80 (Fed. Cir. 2021). The Federal Circuit did not allow a petitioner to establish *entitlement* using only her own statement. And I am not disregarding the declaration; rather, I am finding that its contentions are not adequately corroborated.

I also find that the additional witness statements have minimal probative value. In particular, although Dr. Zuiker, Mr. Hinrichs, and Mr. Selby *believe* that Petitioner's basketball skills have decreased due to a problem with his left shoulder, without supporting medical records I cannot rely on these lay witnesses to conclude his vaccine injury was the cause for such athletic performance issues. The same conclusion applies to Ms. Bowling's description of Petitioner's challenges with household chores. Further, these declarations generally recite statements made by Petitioner about his condition. However, this still does not overcome the prohibition in Section 13(a). These declarations do not outweigh the complete absence of corroborating medical evidence that the injury persisted in accordance with the Act's requirements.

Petitioner particularly focuses on Ms. Bowling's statement that Petitioner stopped bringing up his shoulder pain in later medical appointments because no one had been able to find the cause of the pain or treat him for it. *See* Pet'r Opp'n at 7; Pet'r Reply at 4; Ex. 14 at 1. This excuse could potentially explain a *gap* in treatment, but to find that Petitioner met the six-month severity requirement on this basis here would again cause me to accept Petitioner's claim without substantiation by medical records or medical opinion, contrary to Section 13(a). Additionally, Ms. Bowling's assertion about Petitioner's internal motivation is outside of her personal knowledge and runs counter to the fact that Petitioner underwent treatment, including PT, for other painful areas of his body in this same time period, and thus had the opportunity to discuss his left shoulder.

In making this determination, I note that the Vaccine Act does not require a petitioner to obtain treatment for his injury, or that its existence could *only* be established by that specific kind of objective evidence. And the fact that medical professionals could not offer solutions for his condition would not prevent him from proving entitlement. *See* Pet'r Reply at 5. But here, the issue is not a lack of medical intervention, but that *Petitioner did not report any issues with his left shoulder beyond February 2021*, in any contemporaneous records – despite ample opportunity to do so. In light of the totality of filed record evidence, I conclude that Petitioner has not met the sixth-month severity requirement – and that is fatal to any form of the claim.

## Conclusion

Petitioner has presented insufficient proof to establish the six-month severity requirement. Section 11(c)(1)(D). Therefore, he is ineligible to pursue compensation. Respondent's motion to dismiss (ECF No. 32) is **GRANTED**. Petitioner's motion for a decision on the record (ECF No. 39) is **DENIED.** In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.